******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* FREDERICK ACKER
(AC 38285)

Beach, Sheldon and Gruendel, Js.

*Submitted on briefs May 9—officially released June 21, 2016*

(Appeal from Superior Court, judicial district of Litchfield, geographical area number eighteen, Hon. Charles D. Gill, judge trial referee.)

*Steven A. Colarossi* filed a brief for the appellant (defendant).

*David S. Shepack*, state's attorney, *Jonathan Knight*, senior assistant state's attorney, and *Gregory L. Borrelli*, deputy assistant state's attorney, filed a brief for the appellee (state).

*Opinion*

PER CURIAM. The defendant, Frederick Acker, appeals from the judgment of the trial court finding him in violation of his probation pursuant to General Statutes § 53a-32. The defendant contends, inter alia, that the evidence adduced at trial was insufficient to establish that violation.[1] On appeal, the state agrees. We reverse the judgment of the trial court.

In 2013, the defendant was charged by long form information with numerous counts of animal cruelty in violation of General Statutes § 53-247 (a). Following a court trial, the defendant was found guilty of fifteen such counts. On January 23, 2014, the court sentenced the defendant to a total effective sentence of six months incarceration, execution suspended, with two years of probation. Among the special conditions of probation entered at that time was the requirement that "[i]f you attempt to operate any animal rescue operation you shall not confine any animal in any facility that has not first been inspected and approved by the animal control officer for the jurisdiction where the shelter is located."

On March 12, 2015, probation officer David K. Maus inspected the premises of 359 Spring Hill Road in Monroe (property). An animal shelter known as The Society for the Prevention of Cruelty to Animals of Connecticut (shelter) was located on the property. The defendant lived on the property and volunteered at the shelter. In his application for an arrest warrant, Maus averred that he and "Chief Probation Officer Peter Bunosso conducted a home visit to the [property]. [The defendant] was not available at the time and a staff member accompanied [us] on a detailed inspection. According to the staff member and [the town of Monroe] Animal Control Officer, [the defendant] is only allowed to have 29 dogs on his property. During the inspection 47 dogs were located. Also located in the inspection were several areas of [concern] including . . . broken shelters (roof over the dog cage) and cages that appeared too small for the dogs." Maus therefore opined that "there is probable cause to issue an arrest warrant charging [the defendant] with [v]iolation of [p]robation." An arrest warrant subsequently was issued.

The court held a hearing on the violation of probation charge on August 21, 2015. At the close of the evidentiary phase of that proceeding; see *State* v. *Maurice M.*, 303 Conn. 18, 25–26, 31 A.3d 1063 (2011); the court found that the defendant had failed to comply with the condition of his probation prohibiting him from confining "any animal in any facility that has not first been inspected and approved by the animal control officer for the jurisdiction where the shelter is located." In the dispositional phase of the proceeding, the court revoked the defendant's probation and sentenced him to a term of six months incarceration. From that judg-

ment, the defendant now appeals.

On appeal, the defendant maintains that the evidence was insufficient to support the court's finding that he violated the terms of his probation. "The law governing the standard of proof for a violation of probation is well settled. . . . [A]ll that is required in a probation violation proceeding is enough to satisfy the court within its sound judicial discretion that the probationer has not met the terms of his probation. . . . It is also well settled that a trial court may not find a violation of probation unless it finds that the predicate facts underlying the violation have been established by a preponderance of the evidence at the hearing—that is, the evidence must induce a reasonable belief that it is more probable than not that the defendant has violated a condition of his or her probation. . . . In making its factual determination, the trial court is entitled to draw reasonable and logical inferences from the evidence. . . . Accordingly, [a] challenge to the sufficiency of the evidence is based on the court's factual findings. The proper standard of review is whether the court's findings were clearly erroneous based on the evidence. . . . A court's finding of fact is clearly erroneous and its conclusions drawn from that finding lack sufficient evidence when there is no evidence in the record to support [the court's finding of fact] . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *State* v. *Maurice M.*, supra, 303 Conn. 26–27.

At the revocation proceeding, the state offered the testimony of Maus and Bunosso, the probation officers who visited the property on March 12, 2015. As the state notes in its appellate brief, "neither probation officer for the state testified that the shelter was not first inspected and approved by an animal control officer for the jurisdiction." We have reviewed the record and concur with the state's assessment that it contains "no evidence . . . by the state to establish that an animal control officer for the jurisdiction had not first inspected the [shelter] prior to the defendant returning to work as a volunteer."[2] (Emphasis omitted.) We therefore conclude that there is no evidence to substantiate a finding that the defendant violated the condition of his probation prohibiting him from confining "any animal in any facility that has not first been inspected and approved by the animal control officer for the jurisdiction where the shelter is located." Because that finding is clearly erroneous, the revocation of the defendant's probation cannot stand.

The judgment is reversed and the case is remanded with direction to render judgment for the defendant.

[1] The defendant also alleges a due process violation. Because we conclude that the evidence is insufficient to establish a violation of the terms of the defendant's probation, we do not consider that claim.

[2] Indeed, the defendant presented evidence suggesting otherwise. He offered the testimony of Susan Fernandez, the director of the shelter, who stated that the shelter was "in compliance" and had not received any notices of violations from the animal control officer or zoning authorities. The defendant also offered the testimony of Edward Risko, the animal control officer for the town of Monroe. Risko testified that neither he nor "anyone with similar jurisdiction in Monroe" had issued any violation notices with respect to the shelter since the time that the defendant's conditions of probation were entered. As the state acknowledged in its appellate brief, that evidence "supports the inference that the shelter had . . . been approved to operate . . . ." (Emphasis omitted.)

_____